You came loaded today, Mr. O'Donnell. Glad to give you the practice. Thank you. Take your time in getting set up. Our second case is number 22-13217, David Stone et al versus the Commissioner of Internal Revenue. Mr. Hauser, whenever you're ready. Good morning, Your Honor. May it please the Court, I am Robert Hauser on behalf of the appellants, the Whistleblowers, and with me is Gerald Richman, trial counsel. This is the Whistleblowers' probably court of last resort to bring forth an incredibly significant issue, both not as much for them, but for everyone who is a United States citizen. The reality, the facts are that there is a tremendous number of United States taxpayers with assets in the trillions who don't pay taxes. According to a Congressional mandate, they do have to pay taxes. The reason they have to pay taxes all goes down to a 1986 Act, which requires these entities, which I'm going to call REMICS today, to actually call qualified mortgages. And we think the concept of qualified mortgages is really simple, and ultimately it depends on state law, but we believe it's a no-brainer. It's an obvious fact that the REMICS do not hold qualified mortgages in the way that Congress requires in their mandate in order to qualify for the exemption. I take that all as a given, that your clients have identified potential underpayment of taxes or avoidance of tax liability, et cetera, et cetera, et cetera. I take that as a given. Okay, I appreciate that. We're at the complaint stage. But putting aside everything else, how do you not run headlong into what the Supreme Court said in Heckler v. Cheney? Refusals to take enforcement steps generally involve the opposite from an affirmative act of agency approval. And in that situation, we think the presumption is that judicial review is not available. This court has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion. Generally speaking, under the APA, you cannot sue for an agency's decision to not take enforcement action. Isn't that essentially what you're doing here? You're trying to force a court, you're trying to get a court to force the IRS to take enforcement action. But I might not have to. I might not have to because... What else do you want? I was on a motion to dismiss here. What is a complaint request? It requests certain relief, no question. And this court may say, you can have A, B, and C, but you can't have D and E. And let me see if I can't make the point. Let's say we actually have an evidentiary hearing in the case below. You don't need an evidentiary hearing because I'm assuming the truth of your allegations, which is that your clients have identified a number of entities which are not paying their appropriate taxes, and that if the IRS decided to investigate, they might be able to get these entities to pay taxes. And if that were the case, your clients might receive a share of the proceeds collected. I accept all of that as a given. There's no need for an evidentiary hearing. What relief are you seeking? We want the IRS to be told to do something. And that really depends on... What is the something? They've already done something. They've already evaluated your... According to the many... Normally, this would not be known at this stage of a case, but you filed a couple of inches worth of attachments to the complaint. So we know what supposedly happened, which was a lower level... And if I get something wrong, tell me. A lower level IRS employee looked at your client's notices and said, there's something here. We should go investigate. We can't do it all at once because we don't have the resources, but we should target X number, whatever, and investigate. And then a higher level IRS official said, we're not doing it. Way too expensive, too burdensome, too time consuming. We're not doing it. But that decision itself is irrational and ill-informed, and I can prove that. It's a prosecution. It's an enforcement type of decision and a prosecution type of decision. Those types of decisions are where an agency's discretion is at its highest. The agency gets to... It only has so many resources. It has to decide how it's going to spend those resources. If it spends them on the things that your clients want it to spend them on, it might result in some returns, but it might be at the cost of not being able to spend those resources on something else that might bring higher returns. And that is why Heckler v. Cheney talks about how, if it's committed to agency discretion under that APA exception, there's no sovereign immunity waiver. Why is it not covered by that exception to the APA? There is an exception in Heckler itself for the categorical refusal to pursue a specific policy contrary to congressional mandate. So we think, again, the statute is absolutely clear that the IRS has to collect the tax. Now, do we agree? There is discretion about which taxpayers to chase for that tax. Their lawyers are too good. Their accountants are too good. We understand that that kind of decision is going to be made at the street level in the bureaucracy, but this is a categorical refusal. We said in our response to the motion to dismiss it, this is every rec. This is every remic in the United States is not paying the tax, and every remic in the United States does not own the notes and mortgages that it claims to own. And not only that, it certainly doesn't have them recorded. That may not be dispositive, but the fact that they don't own them is dispositive. Then there's the sheer size of the claim. We're basically talking about every residential mortgage that's then been bought and sold and placed in these entities called remics and then securitized. So we don't think the congressional mandate... You're saying that the Heckler discretion paradigm can only be used on a case-by-case basis and not on a categorical system-wide basis? That has to be true, because what is the... I mean a case post-Heckler that says that. Nobody has run with Heckler the way I'm asking the court to, but the cases that I know about where the person in my position loses are cases that do deal with single events. Right. So let me give you a different scenario. It's not APA, but I think it illustrates the point. U.S. Attorney's Office here in the Southern District of Florida, during the heyday of drug trade. Maybe the heyday has never gone away, but at least in terms of what people feel. The 80s and 90s in South Florida. The U.S. Attorney's Office decides, listen, anything under a kilogram of cocaine at the airport, we're not prosecuting. We don't have the resources. We don't have the time. We can't get people to speedy trials. We're overwhelmed. We can't. The state authorities handle everything under a kilogram of cocaine at the airport. We're not prosecuting. Assuming someone, a private citizen had standing to challenge that, you think that decision is not within the executive's discretion? It may or may not be. I mean, I understand there's policy and resource reasons why you don't chase certain criminal issues, and I don't think that's my case, but I get the court's point. If this, all right, let me flip it back to the APA. If the agency had decided, let's say they took one of your examples and incorrectly figured out that there was a tax violation, but the tax violation was worth $100 of tax proceeds a year, and they're like, too little. We're not going after any of these people because it's just not worth the fight. You think they got that wrong? Instead of 100, it's actually a million. Can you sue? It's only one tax prosecution. I would not argue. No, no, no. They use one as a sample. They're like, go ahead and investigate this one of the ones that your client mentioned. Go ahead and look at this one. And the IRS official makes a mistake. Investigates it and says, you know what? They're right. There is a tax problem there, but they only underpaid $100. And then everybody else above that official says, if that's the case, we're not going after any of them because we're not going to start filing lawsuits or administrative proceedings or penalties for $100 per taxpayer. You think that first IRS official got it wrong. It's not really $100. It's a million dollars in potential tax liability. Can you force the agency to prosecute? If I can show that they have violated a congressional mandate across the entire category of taxpayers so that no remits are being pursued for tax, that would violate the congressional mandate. And so every time that the IRS decides on a system-wide basis that it is not going to as whistleblowers can sue to force the agency to prosecute. Not necessarily. Because tell me the difference. It's a number of things. It's how clear is the congressional mandate? How clear are the facts? The congressional mandate is the same for every tax issue. It's like if you can understand the tax code and you have a liability, you got to pay it.  The next point is the growth size of the claim. The fact that the tax code is not ambiguous. The fact that the noncompliance and I appreciate that that's not disputed. In the code of federal regulations, there's a 1% de minimis rule. So we already know what it takes to comply. And then finally, we know from the same code of federal regulations that the burden is on the taxpayer to document compliance. It's not on these poor bureaucrats who would have to sift through all these mortgages. If the onus is on a taxpayer, I'm out of my principal argument. So I need to sit down. Tell me. No, you're on our time. So let's talk a little bit about the tax court proceedings. You didn't you and your or your clients did not take an appeal from the tax court rulings, right? That's true because it was correct. The tax court ruled correctly. In fact, we're disappointed that the IRS directed us to the tax court because in hindsight, that court is the wrong court. That court can't do what we're asking the article three courts to do. So it was really silly to ever go there. Tell me what the declaratory judgment in this case would look like if you win. That the IRS acted arbitrarily and capriciously by refusing to investigate and pursue these claims because of the sheer size of them and the obvious cost benefit. And you wouldn't be happy with that. That's only half a victory for you. The IRS looks at that and says, eh, we were told we were told we acted arbitrarily and capriciously in the past. It's not telling us what to do going forward. You want more because your clients want money in their pockets, understandably. But I may not need more, Your Honor. Here's why. If some judge actually takes evidence on this and determines that there's a trillion dollars of tax owed, that the evidence of that is actually held in public record, for example, that the banks don't actually own the notes that they have to own in order to be qualified mortgages. If some district court says all that and then the IRS in the bowels of the IRS building in D.C. nevertheless says we know all that and we're still not going to prosecute. I have a weaker case, but that isn't today. Today, I have the IRS saying we don't care. We're never going to listen to you. We don't care if we're wrong. Why are those two situations different? Because they seem to me that in the second, the first situation, the IRS is in a worse position because now somebody has validated your client's position and they're still saying we're not doing anything. And you're saying you have a weaker case. I don't understand. At least they really did exercise informed discretion at that point today. What's the informed discretion? Is that they know how much money is involved and we're still not doing it. Yes, because we don't care. That would really be something. I don't think that's going to happen. That's a weaker case for you. I think it is because then they can really say we do the facts. We didn't get it wrong. We didn't botch it. We weren't incompetent. We did find the facts. We knew the facts and we still made informed administrative discretion on to pursue that. That's a hard case for me. Then these arguments that I'm hearing from the bench, yeah, they do all the facts and they still didn't proceed. But this is a case where they don't know the facts. They've sort of been willfully blind to them. Okay. Thank you very much. You've saved your time for rebuttal. Thank you, sir. Ms. Aveto. May it please the court. Julia Aveto for the Commissioner of Internal Revenue. The whistleblowers here have already obtained all of the remedy that Congress has created for whistleblowers in their position. They have received a determination regarding an award from the IRS, which they were able to appeal to the tax court. They did so. They received rulings from the tax court in both of their proceedings, which counsel has here conceded were decided correctly. They did not appeal those rulings. Well, but the tax court said they had no jurisdiction. Respectfully, Your Honor. In those proceedings, the tax court found it did have jurisdiction. Not over everything. They had the tax court, which I think what Judge Hall is saying is that the tax court said to the extent that you're looking for money, you can't get any because there hasn't been any collection of proceeds. And without collection of proceeds, you're not entitled to anything because zero percent of zero is zero. Correct. To the extent that the whistleblowers were asking the tax court to do something else, like force the IRS to take enforcement action. That's what the tax court said. It had no jurisdiction to entertain, right? That's right, because there's no waiver of sovereign immunity for the tax court or any other court to grant that relief. And as this court has very well explained, the APA doesn't get you there. The waiver of sovereign immunity in the APA does not provide for review of actions committed to agency discretion, which this categorically is. And I'd like to speak a little bit to the actual. One thing before you move on. If the tax court's reason for not engaging with the claims that are being made here now was lack of jurisdiction, why is that? Because it actually merits it. Well, it didn't decide those on the merits, right? But it decided all that it could. It decided everything within the way that I mean, you know, yes. Well, it seems like it's a problem because then there's not there wasn't the possibility for this to be brought before the tax court. And that's part of it. You have to either it has to either have been brought previously in another case, or there had to have been the possibility for it to have been brought previously in the other case for there to be race judicata. And you just conceded that it couldn't be brought really in the other case. So why is this race judicata? It is your honor. It is race judicata only as to the issues as that are subject to the waiver of sovereign immunity as to the issues that are not within any waiver of sovereign immunity. There is no race judicata and there cannot be because there is no court of competent jurisdiction. But the tax court has different jurisdiction than we have. And so, you know, the tax court isn't going to be making decisions under the APA about whether something's arbitrary and capricious, right? That's right. So if it said, we can't decide whether it's arbitrary and capricious because we don't decide, we don't have jurisdiction to decide whether it's arbitrary and capricious. How is that race judicata on whether the committed to agency discretion? Well, or even on whether in district court, it's arbitrary and capricious, assuming there's no other exception that applies. In other words, if you can't, if it doesn't have the power to decide an issue because of its limited jurisdiction, which is different from the jurisdiction of the district court, then how could it possibly be race judicata on that issue? Well, in terms of the needle that you're threading, we would agree that it can't. But that does not confer jurisdiction on the district court. That doesn't say that because Congress created this very specific waiver of sovereign immunity that provides an avenue for disgruntled whistleblowers to seek relief in a particular court does not reserve to the general federal jurisdiction issues for which there's no waiver of sovereign. I agree that that speaking generally, that that's correct, but that's something very different than race judicata. Yes. So you would agree then that race judicata does not apply to their argument that it's not committed to agency discretion, right? That's yes. We would instead would take the position and have taken the position. Or even that it's arbitrary and capricious. It doesn't race judicata doesn't apply to their argument that it's arbitrary and capricious because it would have been impossible to bring such a claim in the tax court, even if there were even if this were the kind of claim that would normally fall into that category. You couldn't bring it in the tax court because the tax court doesn't have jurisdiction to it, but the district court does. Assuming, for example, and just for purposes of this question, that it's not that the committed to agency discretion exception or the other exception don't apply. I would push back on that in two ways. And first is that the elements of race judicata are evidentiary at base. It has to come out of a common nucleus operative fact that the transaction of occurrence has to be the same from one claim to the next. You have to have the ability to be able to raise it in the court, right? It has to either have been something that was raised or could have been raised. And that's a sovereign immunity argument. Not the way our position is that anything that can that could have been decided under 7623B was the province of the tax court and was decided by the tax court. Anything outside 7623B is outside the waiver of sovereign immunity and cannot be decided by any court. Right, but that's the point. The tax court can't decide that an issue is outside of the waiver of sovereign immunity for federal district courts and decide it for itself. Yes. And that's the whole point, right? And so when we're talking about arbitrary and capricious, the tax court doesn't have arbitrary and capricious. It also doesn't have jurisdiction to decide whether something is committed to agency discretion. Yes, there's no APA jurisdiction in the tax court at all. And for those reasons, you can't have res judicata as to those two issues based on the tax court decision. Yes, we're in agreement. Okay, right. I just wanted to make sure. But the district court did rule on alternative res judicata, which is why I got into the and said there was an adequate remedy at law. There was not an adequate, other adequate remedy and there was no res judicata. So, what we're back to is really 701A2. It should be barred by 701A2 because it's a decision committed to agency discretion. We would not identify error in the district court's holding that. On res judicata? On res judicata. Really? Because, excuse me, there's the concept of an adequate remedy and we would direct the court to the Ninth Circuit's decision in Norvell, is if Congress, in the context of a challenged agency action, has provided an independent cause of action or alternative review process, that's an adequate remedy, even if the claims you wish to advance in it are not within that waiver of sovereign immunity. And for that reason, we believe the district court correctly held that the tax court decision is res judicata because 7623B is your independent cause of action and your alternative review process that Congress provided, looking specifically at people in these circumstances, whistleblowers who are displeased that the IRS did not pursue the action they recommended or collect the proceeds they believed were available. If, let me give you a very strange set of facts. The record shows that the IRS, when it received the notices or complaints, whatever you want to call them, from these whistleblowers, issued a denial letter or whatever it's called. Is that the term of art? Well, we have to be careful with our terms of art. A rejection letter comes with no consideration. A denial letter comes after some consideration. Okay. Okay, so in my case, there is consideration. Denial. Okay. A denial letter. But the denial letter expressly says on its face, you filed this on a Tuesday. We don't grant anything on Tuesdays. Committed to agency discretion. I believe so, Your Honor. Really? There's no limit to that principle either. There's no waiver of sovereign immunity to challenge it. Because the whistleblower- There's that footnote, that cryptic footnote in Heckler, right? Yeah, and there have been district court decisions, which are cited in the blue brief, about occasions where there has been a treasury policy that district courts have seen fit to enjoin as arbitrary and capricious, despite the government representing that other adequate remedies were available to the complainants. But in these circumstances, and the case you just described is one of the hard ones like that. But this is not one of the hard ones. Same thing with flipping a coin, right? And that- We flipped a quarter, came up heads, you lose, denied. But no other discussion or consideration of the merits, of the cost, of the burden, of the benefits, nothing. Just a flip of a coin. Congress- You would say that that's committed to agency discretion. We would say that Congress should be made aware of that. And Congress may want to set some agency priorities there. We would say that that's Congress's job. And that- Your answer is committed to agency discretion. Under the current law, yes. And if the agency discretion is being abused, Congress needs to take charge of the agency and say, do your job. Your discretion is not to pick dates on the calendar where you choose not to do your job. Your discretion is to balance the interests of enforcement with the interests of the public fisc, and to say, how shall we allocate our scarce resources towards the full and fair enforcement of the tax code and the collection of tax necessary to conduct government operations? And that's what happened on this record here. There is not any evidence in the whistleblower paperwork that was received by the whistleblowers that came before the tax court that we know of that said that the IRS had any kind of policy not to enforce remnants. I think that was not a correct statement of the factual record. Instead, we have a report that indicates exactly the extent of the particularized individual investigation that the IRS undertook with respect to an entity identified by these whistleblowers. And the IRS was able to look at that and say, this is a gnarly state law issue. There are lots and lots and lots of chains of title in these trusts that aggregate these mortgage documents. And the cost to us of investigating every chain of title to make sure that everything is hunky-dory in every one of these does not reflect, in our view, a potential return on investment that would be a good use of public money, that would be a good use of our employee time. We have more important things to do. To play devil's advocate, though, the IRS sometimes takes on tax test cases to send a message. It can. They're not prosecuting everybody in the country who may have committed a tax snafu. But they go after somebody to try to tell people, listen, if you're one of the ones who is doing this, you may get unlucky enough to be in our crosshairs because we may prosecute, we may go after you. That is a discretionary decision that is committed to the discretion of the IRS. But I thought your earlier statement was suggesting that the IRS decided that it wasn't worthwhile to go after an industry. That's a very different question than going after one or two or three or four if the IRS thought that something was being abused. If the IRS thought that something was being abused, that's absolutely right. They absolutely could decide to make an example, just as any agency or enforcer with the discretion to enforce can choose to do. But they didn't. They didn't choose to do that here because they didn't see that. They didn't see this widespread abuse that the whistleblowers identified. They said, even if we did all of this state law investigation and determined that some of these chains of title were flawed, that wouldn't necessarily invalidate the remic status of these entities. And I think there's more than meets the eye to the claim here. And even if we assume, as the court must, that all of the allegations in the complaint are true, it still does not compel the IRS to investigate whether to make an example of a particular wrongdoer or to pursue an industry when they have, in their considered discretion, looked into it and said, this is not a good use of our money. Let's spend our money on something that, where we can recover a greater benefit for the public fisc. The court has no further questions. We rest on our brief. Thank you. Thank you very much, Mr. Vedder. Mr. Houser. Thank you, Your Honor. I'm back. Briefly in rebuttal, I appreciate the dialogue about res judicata. I was not going to talk about res judicata because I didn't think it was a good argument. I do appreciate the dialogue that the court had with us about agency discretion because I think that's where the rubber meets the road here. And I think what we learned from that police discourse with the court is that as resolved in a motion to dismiss is tied up with the merits. And we're on a motion to dismiss. So we never got to talk about the merits. We had a good conversation about, well, the FLE had an excellent conversation. How wild, how off the rails can administrative action be before the Article III courts will step in and say, no, we can't tolerate that degree of abuse of agency discretion. And then the question is, how obvious do I, as a plaintiff in an administrative case like this, how obvious do I have to make it to the court that the motion to dismiss phase, that the agency is off the rails and doing something completely irrational? So we explained in our response for motion to dismiss, it's docket entry 19, that every remic in the United States is out of compliance. I mean, it's a staggering issue. And yet we're out on a motion to dismiss implying subject matter jurisdiction. And I want to reemphasize the 1% rule in the Code of Federal Regulations. And the fact that the burden is on the taxpayer. So the taxpayer would have to come forward with evidence showing that 99% of their remics have qualified mortgages that are required in the IRS code. Not the IRS. The IRS doesn't have to do that. Taxpayer has to do that. And I think what we're being told is, we're not even going to ask. But the documents you attach to the complaint indicate that the government decided not to go forward because it would expend significant resources. That's something that agencies do all the time. Why is that not measured consideration? Even though you think it's incorrect at the end of the day, that it is worth the IRS's time. But I think the agency makes a mistake and makes a mistake in figuring out the cost benefit. A court can step in and say, you got the cost benefit wrong. You need to go enforce and prosecute. Well, one of the problems, Your Honor, is that we were not interviewed here. If we had been interviewed in accordance with procedure, I'm confident that we could have pointed the IRS to the Code of Federal Regulations, which appears to have been... If the IRS interviewed your clients, heard them ad infinitum, got everything, every bit of information you wanted to present, and then said the same thing, the government would expend significant resources. So I'd have a harder... You have APA review? I'd have a harder time making the argument that I'm making here because... Do you have APA review? Maybe not. Why not? Because they didn't do something irrational. They didn't ignore the procedures. That's the thing. It seems to me, and this is only my personal perspective, that your link to APA review is the wrongheadedness of the agency's decision as to expenditure of resources. And how arbitrary it is. Because if I had an opportunity back when this whistleblower process was going forward, I could have pointed them to the Code of Federal Regulations the way that I'm citing Peter McCord. What would the Code of Federal Regulations have told them with regard to the expenditure of resources? That they only need to look at 1%. And they don't have to do it. It's the taxpayers' problem to show them that they're 99% compliant to be in the safe harbor. That's really simple. But you're saying that, but the IRS has to do something to make the taxpayers show them. Sure. They have to ask. Yeah. Show us the records that you're required by statute to keep... Or sorry, by reg to keep to show 99% compliance. How could that be expensive? Because if there are a bunch of state regulations about how you properly register these things, and then they have to look at each of the registrations under each of the different state laws to figure out whether it complies, then it's not enough that the taxpayer goes ahead and provides what they say are the required records to show that it's not subject to tax. The IRS, it's like in any kind of enforcement action, the agency that's doing the enforcement has to have the evidence to show, and also the legal basis to show that they're not in compliance. And in the end, it all comes down to how it is that the agency wants to spend its enforcement budget. And that is a matter that is entirely discretionary. The thing I haven't heard you say, I've heard you say it's arbitrary and capricious, but that's one thing, but it doesn't respond to the exception that is listed, which is committed to agency discretion. And that is the part that I think you have to be able to respond to. Whether or not you disagree with the way that the IRS has decided to spend its budget, you still have to respond to why it is that it's not committed to agency discretion, or even if it is committed to agency discretion, that in this case, that doesn't apply. And that's what I think you're missing. Okay. The answer to that question is, and this word actually is in our response down below in the district court, is it's the congressional mandate to collect that tax from entities that don't comply with the Romics statute. And it's the gross size and categorical nature of what we're talking about. We're not talking about one taxpayer who goofed, and they made a deal with the IRS, and it would be totally inappropriate for citizens to come in and try to unwind some deal that they make with a taxpayer. And I'm not in favor of that. The courts are never going to allow it. This is a categorical refusal to pursue tax from any Remic, even though... Do you know what? Heckler has a line that addresses that. This is the danger that agencies aren't doing their jobs with sufficient vigor, or as Congress tells them to, does not lead to the conclusion that courts are the body to police them. It's for Congress in the first instance. So, I mean, Heckler tells us, okay, they're not doing their job. They've made discretionary decisions. They're wrong, but it's not the duty of the courts to police the agencies to make them enforce them. I mean, Heckler says that. But it also has the language that we've relied on. The what? Heckler also has the language that we've relied on in our brief, which I'm paraphrasing here since I don't have the language, but it's the same thing. A blanket policy refusal to carry out congressional policy. That's us. Well, this is a blanket refusal as applied to the facts and circumstances of complicated mortgages. But I can't... If it doesn't say that, you've got to apply it to something that's rather complicated. But I'm compelled to bring... I'm compelled... You've answered my question. I'm just saying that's the rough years, Heckler. So, we urge the court to reverse remand with instructions to hear the claim on its merits. All right. Thank you.  Thank you both very much.